IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

I, Roxie A. Craig, United States Postal Inspector, do hereby swear and affirm the following facts as being true to the best of my knowledge, information, and belief:

1. I am a Postal Inspector employed by the United States Postal Inspection Service (Inspection Service) assigned to the Seattle Division. The Seattle Division has responsibility for Inspection Service investigations in Alaska, Idaho, Montana, Oregon and Washington. I have been employed by the Inspection Service for nineteen years. I am currently assigned to the Multifunctional Team in Portland, Oregon. As part of my duties, I investigate the illegal mailing of prohibited substances, including controlled substances and proceeds from the sale of controlled substances. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am empowered by law to conduct investigations and to make arrests for federal offenses. My training and experience includes a Bachelor of Arts degree in Human Resource Management from George Fox University, Basic Postal Inspection Service Training at Potomac, Maryland, and Post Basic Postal Inspection Service Training at Los Angeles, California. I have received additional training in 2002 in Prohibited Mail Narcotics and in 2003 I received training in Prohibited Mail – Dangerous Mail. As a U.S. Postal Inspector, I am authorized to investigate crimes involving offenses relating

to the United States Postal Service (U.S.P.S.). During the course of my employment with the Inspection Service, I have conducted or participated in criminal investigations involving homicide, robbery, assault, burglary, mail theft, identity theft, credit card fraud, bank fraud, wire fraud, mail fraud, the unlawful mailing of dangerous material, the fraudulent use of stolen or forged Postal Money Orders, and the fraudulent use of stolen credit card information to purchase merchandise, and the shipping of that merchandise through the U.S. Mail; including the unlawful mailing of dangerous controlled substances.

I have applied for and received more than 15 search warrants in the investigation of offenses relating to the U.S.P.S. I have participated in executing more than 30 federal and state search warrants. As part of my duties, I investigate incidents where the United States mail system is used for the purpose of transporting non-mailable matter, including controlled substances such as marijuana, cocaine, methamphetamine and heroin, as well as proceeds of the sale of controlled substances, in violation of Title 18, United States Code, Sections 1716 and 1952(a)(1) and Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

2. Based on my experience, training and discussions with other law enforcement officers experienced in drug investigations, I know that certain indicators exist when persons use the United States Mails to ship controlled substances from one location to another. Indicators for parcels

that contain controlled substances include, but are not limited to the following:

a. It is a common practice for the shippers of controlled substances and proceeds of the sale of controlled substances to use Express Mail because the drugs arrive faster and on a predictable date, and this system allows shippers to keep track of the shipment. With regards to Express Mail parcels, shippers pay for the benefit of being able to confirm the delivery of the parcel by checking the U.S. Postal Service Internet Website and/or calling a toll free number.

b. These parcels in many instances contain a fictitious return address, incomplete return address, no return address, the return address is same as the addressee address, or the return address does not match the place where the parcel was mailed from. These packages are also sometimes addressed to or from a commercial mail receiving agency (i.e., UPS Store). These address practices are used by narcotics traffickers to hide the true identity of the person(s) shipping and/or receiving the controlled substances from law enforcement officials.

c. In order to conceal the distinctive smell of controlled substances from narcotic detector dogs, these packages tend to be wrapped excessively in bubble-pack and wrapping plastic, and are sometimes sealed with the use of tape around all the seams. Also,

the parcels often contain other parcels which are carefully sealed to prevent the escape of odors. Sometimes perfumes, coffee, dryer sheets, tobacco or other smelling substances are used to mask the odor of the controlled substances being shipped.

d.  When the shipper mails controlled substances from a particular area/state, the proceeds from the sale of these controlled substances may be returned to the shipper. Based on experience and discussions, there are known source states, where controlled substances are mailed from, including California, Oregon, Washington, Arizona and Texas.

e.  I know from training and discussions with other law enforcement officers that the following controlled substances are likely to be found during parcel interdictions: marijuana, methamphetamine, cocaine, LSD, psilocybin mushrooms, heroin, opium, and MDMA.

3.  In this warrant application, I seek this Court's authority to search this Express Mail Parcel bearing USPS tracking number EI998634194US, which is described in greater detail below, for controlled substances in violation of Title 21 U.S.C. Sections 841(a)(1) and 843(b) and Title 18 U.S.C. Section 1716.

## RELEVANT FACTS PERTAINING TO EXPRESS MAIL PARCEL EI998634194US

4.  On August 6, 2013, Postal Inspectors were informed that an express mail parcel was being shipped from Northern California to Ketchikan, Alaska.

This parcel met several characteristics that the drug traffickers use to prevent the detection of drugs being shipped through the mail. For this parcel, these characteristics included, but are not limited to:

a. Name for sender and return address don't match. (Per Accurint, a law enforcement search database, there is no record for a J. Skeeterson or anyone with the last name Skeeterson at the address 1016 F Street, Arcata, CA 95521.) The data provided by Accurint is a combination of records from different data sources which are updated daily, weekly, monthly, and annually, depending on the particular data source.

b. A review of the persons receiving mail at 3946 Fairview Ave Upper, Ketchikan, Alaska 99901 revealed that a man by the name Dakota Langstaff receives mail at that address. According to National Criminal Information Center, Langstaff was arrested with controlled substance in 2006 and a possession of marijuana in 2009.

c. The parcel had a waiver of signature which is known to be used to conceal the recipient.

d. The parcel was sent from a known source state by a known drug dealer. (California is a known source for narcotics, see Paragraph 2.c)

5. Alaska State Trooper, Investigator Larry Duran, a Certified Narcotic Dog Handler and his certified narcotics detection dog Justice were at the Ketchikan Post Office 99901 on August 8, 2013.

6. U.S. Mail express parcel number EI998634194US was placed in a deployment circle in a room with four other similar control parcels for examination by Justice. Investigator Duran and Justice were not present when express mail parcel EI998634194US was placed in the deployment circle. Justice was then directed to examine the deployment circle and, when he did so, Investigator Duran told me that Justice alerted on Express Mail Parcel EI998634194US in the manner that Justice has been trained to alert when he detects the odor of a controlled substance (he knocked the parcel off the table and started pawing at the parcel). Justice did not alert on any other parcels in the deployment. . Investigator Larry Duran provided me with an affidavit of his qualifications and Justice's qualifications, which is attached to this affidavit as "Exhibit 1."

5. Based on my training and experience as a Postal Inspector and the aforementioned factors, your affiant believes there is probable cause to believe that the subject package contains controlled substances, and/or other evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 843(b), and Title 18, United States Code, Section 1716.

FURTHER AFFIANT SAYETH NAUGHT.

Sworn to before me by telephone on record 8·9·13

Roxie A. Craig
Postal Inspector

*Signature Redacted*

Subscribed and sworn to before me, this 9th day of August,

*Signature Redacted*

U.S. MAGISTRATE JUDGE



AST CASE NO. _____ AK13059417

SEARCH WARRANT NO. _____

ATTACHMENT IN SUPPORT OF AFFIDAVIT FOR SEARCH WARRANT

# PERFORMANCE RECORD OF SCENT DETECTION CANINE TEAM INV. DUR'AN & K-9 "JUSTICE"

The facts tending to establish the forgoing grounds for issuance of a search warrant are as follows:

1. The affiant is K-9 handler and Investigator Larry L Dur'an II, who has been an Alaska State Trooper since February 24, 2008. In addition to completing 217 hours of training related to the interdiction of controlled substances, the affiant has completed a 2-week, 80-hour Drug Detection Canine Academy through the Alaska State Troopers K-9 Unit. The affiant and K-9 Justice have been certified as a scent detection team since May 2, 2013.

2. K-9 Justice completed a 2-week, 80-hour Drug Detection Canine Academy through the Alaska State Troopers K-9 Unit and was certified in the detection of the following controlled substances: Cocaine, Heroin, Methamphetamine, Marijuana, and the derivatives thereof on May 2, 2013. K-9 Justice had two prior state certified K-9 handlers and successfully completed two prior Drug Detection Canine Academies through the Alaska State Troopers K-9 Unit.

3. From May 2, 2013 to present, K-9 Justice has been commanded to sniff for the presence of the odor of the previously mentioned controlled substances approximately 77 times during scent detection training and has indicated on 77 of the training substances. K-9 Justice performs blank training searches where no controlled substances are present and also trains in a variety of environments and conditions including, but not limited to, luggage, vehicles, packages, currency, residences, and commercial buildings as part of his maintenance training.

4. Since K-9 Justice's last certification, K-9 Justice has been commanded to sniff for the presence of the odor of the above mentioned controlled substances 110 times during actual controlled substance investigations and has indicated 59 times during those investigations. Subsequent searches and/or interviews have corroborated K-9 Justice's indication to the presence of the odor of controlled substances on 50 of those indications. There has been 09 occasions where K-9 Justice indicated and the reason for the indication remains unexplained.

5. Currently there are 01 of the K-9 indications that are unexplained due to pending search warrants.

6. On 08/08/13, at approximately 1945 hours, K-9 Justice indicated to the presence of the odor of one or more of the above controlled substances coming from an Express Mail parcel bearing tracking number "EI 998634194 US," which was being mailed from "J. Skeeterson, 1016 F St., Arcata, CA 95521" and was being mailed to "D. Langstaff, 3946 Fairview Ave Upper, Ketchikan, AK 99901."

Title – Inv. Larry L Dur'an II   Signature _____   **Signature Redacted**

Subscribed and sworn before me on 8/8/2013 at Ketchikan, Alaska

_____ Notary Public

Attested to on record before me.
8·9·13

**Signature Redacted**